IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GEORGE F. KLECAN,

    Plaintiff and Counter-Defendant,

    v.                                                                  Civil No. 15-00016 WJ/KBM

JANET SANTILLANES as Trustee
of the Eugene E. Klecan and Jane F. Klecan
Revocable Trust dated March 11, 1999 as Amended,

    Defendant and Counter-Plaintiff.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ON COUNTS II AND III and
ON DEFENDANT'S COUNTERCLAIM**

    THIS MATTER comes before the Court upon Plaintiff's Motion for Partial Summary Judgment, filed July 1, 2015 **(Doc. 25)**. Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiff's motion is not well-taken and, accordingly, it is DENIED.

BACKGROUND

    This case involves a rather unpleasant family dispute over trust assets. Plaintiff filed this case in federal court asserting diversity jurisdiction: Plaintiff resides in Texas; Defendant is a citizen of New Mexico, and the Trust at issue here is administered in New Mexico. Plaintiff George Klecan ("Plaintiff" or "George") is one of eight siblings who are beneficiaries in line for distribution of the Klecan Trust assets, and Janet Klecan Santillanes ("Defendant", "Trustee" or "Janet") is his younger sister and the sole Trustee of the Klecan Trust. Both parties have filed motions for partial summary judgments, but the Court addresses Plaintiff's motion only at this

time.  The Complaint is styled as a Petition for Removal of Trustee; to Compel Accounting and Distribution of Trust Assets; and for Injunctive and Declaratory Relief.

Three of the six counts in the Complaint allege breach of trust, based on different alleged conduct of the Trustee.  Count I alleges bad faith by Trustee in that she has threatened disinheritance and has demanded releases in exchange for a beneficiary's distribution; Count II claims that the Trustee has refused to distribute trust assets in accordance with the trust terms and New Mexico law; and Count III alleges a breach of duty of loyalty by the Trustee in treating the Plaintiff with hostility while self-dealing with her immediate family members. Count IV seeks removal of the Trustee; and Count V requests that the Court declare that the "contestability" provision of the trust has not been triggered and that the Trustee does not have the authority to demand a release in exchange for the distribution of George's share.  Count VI is a request for injunctive relief to enjoin the Trustee from setting aside an unreasonable amount of Trust funds as a reserve for litigation and that Plaintiff's 1/8 beneficiary share not be used to fund legal action against him.  George seeks summary judgment on Counts II and III, as well as on the Trustee's counterclaim for declaratory relief, which requests approval of the Trustee's accountings.  *See* Doc. 10, at 17-28.

The main asset of the Klecan Trust comes from the sale of La Plaza Apartments which sold for almost $2.9 million in June 2014.  In this motion, Plaintiff contends that the Trustee has engaged in self-dealing in which her household has been enriched through the hiring of her husband, Abraham Santillanes, who managed and supervised work at the La Plaza Apartments.  Plaintiff contends that this "self-dealing" is a breach of the duty of loyalty under the Uniform Trust Code and New Mexico case law.  Plaintiff also claims that the Trustee has filed with the Court her accountings for the years 2013 and 2014 that contain improper payments related to her

self-dealing and improper off-sets against him.  Plaintiff asks the Court to declare them as disapproved.

Although the Court does not intend to address Defendant's motion for partial summary judgment at this time, an outline of Defendant's position is helpful in putting both sides of this case in context.  The Trustee's motion for partial summary judgment, which was filed after Plaintiff filed the instant motion, seeks either a judicial determination that George has forfeited his share by his actions, or for a Court declaration to distribute his share, offset by expenses.  (Doc. 36).  Defendant claims that George has forfeited his share of the Trust assets under the express terms of the Trust, specifically the provision stating that any beneficiary who disputes the validity of the Trust or asserts any claim against any properties of the Trust forfeits his interests under the Trust.  Defendant contends that George's conduct in filing this litigation, challenging the selection of Janet as the Trustee by the Trust Grantors, and refusing to sign a release acknowledging approval of the proposed distribution and a promise not to assert any other claims, triggers the Trust's forfeiture provision. Defendant asks the Court to either declare that George has forfeited his inheritance, or in the alternative seeks a judicial Order requiring the Trustee to distribute George's share of the assets after offsetting certain expenses.

I.      **Undisputed Facts[1]**

Eugene and Jane Klecan ("Grantors") created a Revocable A/B Trust in March 1999, entitled the "Eugene E. Klecan and Jane F. Klecan Revocable Trust." The Trust is a valid, conventional gift trust through which Eugene and Jane Klecan's assets were to transfer to their eight children.  The Trust terms state that it was established and accepted "under the laws of the State of New Mexico, and all questions concerning its validity and construction shall be

---

[1]  The undisputed facts included here are supported by exhibits attached to the pleadings.  Facts are undisputed unless otherwise noted.  The Trust is attached to the Petition, *see* Doc. 1-1.

3

determined under such law." Provision 1.2 of the Trust states that "[t]he Trust is primarily for the benefit of the Grantors while living and for the benefit of the Grantors' descendants after the death of both Grantors." Under the terms of Trust, George Klecan, along with his other siblings, are named as the beneficiaries.

Plaintiff's statement of fact ("SOF") number 6 states that under the terms of the Trust and the Uniform Trust Code, George is a material beneficiary and qualified beneficiary in which no adjudication or court proceeding has determined he is not. Defendant disputes this fact, claiming that under the terms of the Klecan Trust, George has forfeited his share of the Trust and is therefore not a material or qualified beneficiary. This turns out to be the threshold and core issue in the case, based on a provision in the Trust stating that any beneficiary who disputes the validity of the Trust or asserts any claim against any properties of the Trust forfeits interests under the Trust ("forfeiture provision"). *See* §14.5A at 26 of the Klecan Trust, Doc. 1, Ex. 1.

Provision 6.2 of the Trust states that the Trust "shall" be divided into eight shares and that the trustee "shall distribute" liquid assets and "shall distribute" proceeds from the sale of non-liquid assets to the beneficiaries "when received." In the Fourth through Seventh Amendments that altered Trust A, it states in the subsequent amendments that Trust A assets shall be distributed "at the earliest convenient date"; the Grantor's intended distributions did not become conditional or discretionary. However, as Defendant points out, the express language of the Trust language in §14.5A provides that beneficiaries can forfeit their share of the Trust, and if a beneficiary forfeits, there is no obligation to distribute to that beneficiary.

On June 20, 2014, The La Plaza Apartments sold for approximately $2.95 million dollars. The money currently in the Trust consists mainly of proceeds from the sale of La Plaza Apartments, which was the last piece of real property left in the Trust estate. Since Jane F.

Klecan's death in 2013, Janet acted as the sole and Managing Partner of La Plaza Apartments Partnership. La Plaza Partnership filed suit to evict George on August 29, 2013.

Plaintiff's SOF 15 states that after the sale of La Plaza Apartments, the Trustee distributed partial shares to six of the named beneficiaries in the Trust and to those she disclaimed her interest in favor of, but distributed none to George. SOF 16 states that since the sale of La Plaza, Janet has distributed over $2,000,000.00, which includes over $100,000.00 in trustee fees and expenses, but has failed to distribute any Trust monies to George. Defendant disputes these facts to the extent that the Trustee has distributed partial shares to seven (not six) of the Klecan siblings, and clarifies that she distributed her share in Trust A to her children to whom she had disclaimed her interest.[2]

On September 16, 2014, George requested a partial distribution based on the 2013 accounting. Defendant contends that George proposed a distribution, prior to mediation, of a settlement amount set out in a 2014 (not 2013) "release and accounting." Doc. 10,¶ 39. In SOF 18, Plaintiff states that in response to this request, Janet demanded that George first sign a settlement agreement and release in order to receive a distribution. Janet denies that a "demand" was made, but concedes with the second part of SOF 18 which states that distribution was offered to George once he signs a receipt, release and waiver approving the Accounting and the proposed distribution and acknowledging that he does not contest the Trust and will not make any claims.

George was employed as manager of La Plaza Apartments until June/July of 2013. The Trustee hired Abraham Santillanes, the Trustee's husband, to oversee and supervise the repairs

---

[2] Defendant fails to support these additional facts with references to exhibits, although Plaintiff does not take issue with this lack of citation. However, the Court has found support for most of Defendant's additional statements in Janet Santillanes' Affidavit, Doc. 31-1, in Defendant's statement of facts in Doc. 37, and in the Answer/Counterclaim (Doc. 10). These particular additional facts are relevant mostly for background and context and are not critical to the issues addressed herein.

and improvements necessary to prepare La Plaza Apartments for sale and the subcontractors who were hired to perform the work. Abraham Santillanes was paid "fees" from Trust funds for this work. The Trust established the Trust Advisory Committee "to direct the Trustee concerning the encumbrance, sale and management of all real property that is a part of the trust estate." The Trustee paid $1,029.25 to Mary Klecan and Mark J. Klecan for attending Plaintiff's mediation in 2014. Mary Klecan received $1,932.00 to attend Plaintiff's eviction hearing. The Trustee had a licensed Texas Attorney representing her at Plaintiff's eviction hearing. Defendant states that Mary Klecan's compensation was based on the hourly rate set by the Trust, and was reimbursed travel expenses to attend the hearing and also that the La Plaza Apartment was owned by La Plaza Apartment Partnership and that it was not owned by the Klecan Trust.[3]

## II.     Legal Standard

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *Ford v. West*, 222 F.3d 767, 774 (10th Cir. 2000).

---

[3] There is no direct support for that representation, but Defendant does provide some basis for that statement in the facts presented in her motion for partial summary judgment. *See* Doc. 36-1, ¶¶ 7 & 13.  However, the accuracy of that statement is not material to the Court's determination on the issues raised in Plaintiff's summary judgment motion.

## DISCUSSION

Plaintiff seeks summary judgment on Counts II and III, both of which allege Breach of Trust, based on Janet's refusal to distribute trust assets in accordance with the trust terms and in treating Plaintiff with "hostility" while self-dealing with her immediate family members. Plaintiff also requests dismissal of the Trustee's counterclaim for declaratory relief, which requests approval of the Trustee's accountings.

### I.     Counterclaim and Trustee's Accountings

Since Plaintiff is requesting dismissal of the Trustee's accountings and Counterclaim, a description of both is appropriate here. As mentioned previously, George was employed as manager of La Plaza Apartments (or "Apartments") until 2013. According to Mary Klecan's affidavit, George had been living and working at the Apartments for thirty years. Doc. 31-2,¶ 3. The Trust initially provided that all eight beneficiaries would be members of a Trust Advisory Committee which would be responsible for the operation and sale of real estate in the Trust and also provided that George had a five-year veto over the sale of the Apartments. Doc. 1-1 at 13-14. The Trust was amended in 2005 changing the Trust Advisory Committee to three members: Mary Klecan, Mark Klecan and Janet Klecan Santillanes. Doc. 1-1 at 38-39.[4]

In June of 2013, the Trustee and the Trust Advisory Committee member met with a realtor to put the Apartments up for sale. Upon inspection, it was discovered that the La Plaza Apartments was in a deteriorated and unsafe condition which required significant repairs and improvements before preparing the Apartments for sale. The Counterclaim asserts that George interfered with efforts to prepare the Apartments for sale, making a formal request that the

---

[4]  These facts are found in the Trustee's statement of fact section, but because the facts are based on the exhibits attached to the Petition filed by Plaintiff, they are undisputed.
.

Trustee resign and calling the police department to complain about the Trustee's actions and numerous other acts of interference. *See* Doc. 10 at 17-20; Doc. 31-2, ¶4.

During their lifetimes, the Grantors had hired the Trustee's husband, Abraham Santillanes, to oversee and supervise repairs to, and the sale of, apartments in Phoenix, Arizona and the Park Paradise Apartments in Albuquerque which Grantors owned. Doc. 10, ¶ 26; Doc. 33-1 (Abraham Santillanes Aff.), ¶2. When it came time to prepare La Plaza Apartments for sale, the Trustee and Trust Advisory Committee hired Abraham Santillanes to oversee and supervise those repairs and improvements, so that the Apartments could be sold for a fair, reasonable price, for the benefit of all the beneficiaries. Doc. 10, ¶ 27 and Doc. 32-1 (La Plaza Partnership Agreement), § 3.4 (authorizing "related party transaction"). Trust funds were expended for these repairs over a six month period. *Id.,* ¶¶28, 29. As a result of the improvements, the value of the Apartments almost doubled in value. *Id.,* ¶¶ 24, 30 & 31. Ten of the eleven beneficiaries of the Klecan Trust approve of the Trustee's administration of the Trust, and they have all signed the release and waiver acknowledging that they do not contest the Trust and that they will not assert any type of claim or demand against the Trust or Trustee, and that they approve that they approve the Trustee's Accounting and plan of distribution. Doc. 10, ¶¶32, 33.[5]

Under the Trustee's accountings, the proposed distribution amount to George is $190,559.84. *See* Doc. 37, Ex. A. This Accounting includes offsets, such as an advance of $70,000 already made to George, and for certain expenses which the Trustee feels would not be fair for other Trust beneficiaries to bear such as: (a) rent owed by George for the three months he

---

[5] It is not clear who the other three beneficiaries are.

refused to vacate the manager's apartment ($1,710);[6] (b) costs of eviction (over $10,000); and (c) attorneys' fees and expenses amounting to over $20,000 incurred by the Trust in responding to George's numerous claims and demands. *See* Doc. 36-2 (accounting of George's share).

## II.     Analysis

Under the Uniform Trust Code ("UTC"), NMSA 1978, Section 46A-8-802, which governs the Trust at issue, a Trustee has a duty of loyalty and "shall administer the trust solely in the interests of the beneficiaries." NMSA 1978, § 46A-8-802. Plaintiff's brief contains references to law on a Trustee's duties, but the legal standard is not in dispute here. Plaintiff seems to disregard the core question in this case—whether he has forfeited his inheritance by his conduct, and Plaintiff's motion for summary judgment rides on the resolution of that question.

Plaintiff contends that this is a case of self-dealing and a breach of the duty of loyalty in which the "no further inquiry" rule applies under the Uniform Trust Code and New Mexico case law:

> [E]xcept in discrete circumstances, the trustee is strictly prohibited from engaging in transactions that involve self-dealing or that otherwise involve or create a conflict of interest between the trustee's fiduciary duties and personal interests.

Restatement (Third) of Trusts, Chap. 15, Section 78(2), Duty of Loyalty, (2007). However, as Plaintiff concedes, the Restatement also adds that the so-called "no further inquiry" principle is "immaterial that the trustee may be able to show that the action in question was taken in good faith, that the terms of the transaction were fair, and that no profit resulted to the trustee." *Id.,* at cmt. b. Plaintiff also relies on *Miller v. Bank of Am., N.A.*, which was an action by trust beneficiaries to recover damages for breaches of fiduciary duty and duty of loyalty. 352 P.3d 1162 (N.M., 2015). In that case, the Bank (Trustee) had invested trust assets in an unproductive commercial building in direct violation of express trust provisions, causing the loss of trust value in

---

[6] According to the Trustee's Affidavit, pursuant to a lease George prepared for himself as both tenant and apartment manager, he paid a total of $300 rent for living three months for an apartment that had a fair market rental value of about $670 per month. *See* Doc. 36-1 (Trustee Aff.), ¶ 20.

breach of its duty of care.  The Bank also arranged loans to the trust from its own affiliates that were secured by mortgages on the building and collected loan fees and mortgage interest from the trust in breach of its duty of loyalty.   The trust beneficiaries sought an order from the court requiring the Bank to disgorge its profits.  However, other than offering relevant black letter law, *Miller* does not help Plaintiff's position because the facts are not sufficiently similar.

        A.       <u>Disputes Regarding Whether Trust Was Properly Administered</u>

Plaintiff seeks dismissal of Counts II and III based on Janet's refusal to distribute Trust assets in accordance with the Trust terms, and in treating Plaintiff with "hostility" while self-dealing with her immediate family members.  As Defendant notes, the premise of Plaintiff's Motion assumes that he is a qualified beneficiary of the Trust, and based on that premise, Plaintiff argues that when a beneficiary is entitled to a share of a Trust, his share of the Trust should be distributed to him.  However, the question that must be resolved first is whether George Klecan is entitled to a share of Trust assets, or whether he has forfeited his share.  If the forfeiture provision applies to George's actions, then there is no obligation to distribute anything to George.

In responding to Plaintiff's motion, Defendant has presented evidence which could suggest to a reasonable fact finder that George has forfeited his inheritance under the Trust's forfeiture provisions because George's conduct could be viewed as disputing the validity of the terms of the Trust or asserting claims against properties of the Trust, for example:  (1) contesting and disputing the Grantor's decision that Janet is the Trustee; (2) seeking Janet's resignation as Trustee; (3) asserting claims for wrongful eviction and breach of contract against the trust, and in the instant lawsuit seeking compensatory and punitive damages against the Trustee; (4) contesting the validity of Trust terms such as the forfeiture provision by seeking to declare it void or invalid.  This evidence regarding George's conduct creates a factual dispute as to whether he has forfeited his inheritance

under the express terms of the Trust's forfeiture provision, and if he has, then the Trustee's conduct is justified and is not in breach of any duty at all.

Defendant also presents evidence rebutting Plaintiff's contention that the Trustee engaged in self-dealing with her immediate family, based on terms of the Trust allowing "related party transactions" which would encompass hiring an individual to oversee repairs at La Plaza Apartments. Other evidence concerning the nature of the alleged "profit" earned by the Trustee's household would suggest to a reasonable fact finder that the "no further inquiry" principle does not apply here. *See Miller,* 352 P.3d at 1167 (noting that a trustee "should not be allowed to use the trust as a means for personal profit other than for routine compensation earned . . . ."). Preparation of the La Plaza Apartments for resale was envisioned in the Trust provisions as part of the main asset of the Trust proceeds and Trustee has presented facts supporting her position that in hiring Abraham Santillanes to oversee the repairs, the Trustee was following the same procedures which her parents, the Grantors, had followed in the past. As Defendant notes, the relief requested in *Miller* was disgorgement, which is an equitable remedy to be given in the Court's discretion. *See Miller,* 352 P.3d at 1165. At this point in the litigation, there is little basis to grant George the equity he seeks in light of the evidence presented by Defendant which is unfavorable to his position because such evidence could reasonably support Defendant's position that Plaintiff has disputed either the validity of the Trust or is attempting to assert claims against Trust properties—either of which amounts to a forfeiture of his inheritance under the Trust provisions.

Plaintiff claims that the Trustee has "refused" to distribute the Trust assets in accordance with the Trust terms. However, it is undisputed that under the express terms of the Trust, each beneficiary has an option: accept a 1/8th share of the Trust which the Grantors established and give up any and all other claims, rights, or interests a beneficiary might have *or* give up that

11

1/8th share in the Trust and pursue other claims a beneficiary might think he has. The Trust provision is clear that a beneficiary cannot have it both ways. Defendant presents evidence that all beneficiaries, except for George, have properly signed a release and acknowledgement before receiving distribution of their share, accepting the Trust terms and the Trustee's accountings. Thus, the Trustee's requirement that Plaintiff sign this release as the others have done prior to distribution of his share can reasonably be viewed as following the terms of the Trust's forfeiture provision rather than an outright "refusal" to give Plaintiff his inheritance or as a demonstration of "hostility" toward him. Under the facts Defendant has presented, a reasonable fact finder could find that the Trustee did not breach the Trust or her duty of loyalty. For these reasons, Plaintiff is not entitled to summary judgment on Counts II and III.

      B.      <u>Disputes Regarding Counterclaim Seeking Approval of Accountings</u>

Plaintiff also requests dismissal of the Trustee's counterclaim for declaratory relief, which requests approval of the Trustee's accountings. However, Defendant has presented evidence to support the various offsets included by the Trustee in calculating George's share of the inheritance. For example, when George refused to vacate the manager's apartment, it became necessary to file an eviction proceeding against him in Texas. Doc. 31-1 (Janet Santillanes Aff.), ¶ 10. The eviction petition was granted, and George filed an appeal of the eviction order. This matter was settled when George agreed to move into another apartment at La Plaza—which had been offered to him all along. *Id.,* ¶11.

While Plaintiff balks at the expenses spent on repairing La Plaza Apartments, it is undisputed that the work that was done raised the value of the Trust's main asset and benefitted the beneficiaries. Defendant has also presented facts showing that the very reason someone needed to spend several months fixing up the Apartments getting it into shape for sale was

because George had let the property fall into such disrepair. *See, e.g.,* Doc. 10 at 20, ¶ 23 (describing unsafe and deteriorating conditions at the Apartments).

The Trustee also observes that if the Court were to void the hiring of Abraham Santillanes (as Plaintiff requests), then Plaintiff would not be able to get the benefit of Abraham Santillanes' work, since if a transaction is voided, it is as if the transaction never happened. *Miller,* 352 P.2d at 1167. George's distribution would have to be reduced accordingly, since the Apartments would be worth considerably less without the repairs that were done. As a result, instead of a proposed distribution share of $190,559.84, George's share would be reduced to $55,952.56. *See* Doc. 37 at 22; Doc. 37, Ex. A. All this evidence creates enough of a dispute to reasonably support a finding that the Trustee's accountings are accurate and justified.

## CONCLUSION

In sum, the Court finds and concludes that Plaintiff's motion for partial summary judgment on Counts II and III of the Petition has no merit because Defendant has presented sufficient material facts to dispute Plaintiff's facts that the Trustee has not properly administered the Trust, based on George's conduct from which a reasonable fact finder could infer that George has forfeited his share of the Trust assets.

The Court also finds and concludes that Plaintiff is not entitled to summary judgment on Defendant's counterclaim for declaratory relief which requests approval of the Trustee's accountings, because material factual disputes exist which suggest that the Trustee's accountings are justified and accurate.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment **(Doc. 25)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE